## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HERON THERAPEUTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 24-1363 (WCB) |
| | ) | |
| v. | ) | **FILED UNDER SEAL** |
| | ) | |
| | ) | |
| AZURITY PHARMACEUTICALS, INC., | ) | |
| AZURITY PHARMACEUTICALS INDIA | ) | |
| LLP f/k/a SLAYBACK PHARMA INDIA | ) | |
| LLP, and SLAYBACK PHARMA LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This order addresses the parties' four motions *in limine* filed with their joint proposed pretrial order. The plaintiff, Heron Therapeutics, Inc., has filed three motions *in limine*, and the defendants, Azurity Pharmaceuticals, Inc.—Azurity Pharmaceuticals India LLP f/k/a Slayback Pharma India LLP, and Slayback Pharma LLC (collectively, "Azurity")—have filed one motion *in limine*.

1. Defendants' Motion in Limine to Exclude the Introduction or Discussion of U.S. Patent No. 11,040,008 and Related Development Work and Exhibits.

This motion *in limine*, Dkt. No. 145, Exh. 17, addresses matters that were covered in the court's November 10, 2025, conference with the parties dealing with the admissibility of exhibits. The court ruled that U.S. Patent No. 11,040,008 and the subject matter relating to that patent are admissible over the defendants' relevance objection. The defendants' motion *in limine* is therefore moot.

1

2.  <u>Plaintiff's Motion in Limine No. 1 to Preclude Azurity from Raising an Invalidity Argument Based on Lack of Utility.</u>

Heron has moved to preclude Azurity from raising a utility defense at trial.  Dkt. No. 145, Ex. 18.  Azurity did not allude to a utility defense in its invalidity contentions or in the report of its invalidity expert, Dr. Mansoor Amiji.  Heron's concern about the possibility that Azurity will raise a utility defense stems from a sentence in a draft of Azurity's list of contested facts that was served on Heron on October 3, 2025.  That sentence reads:  "A POSA would understand that any emulsion of aprepitant that did not have a minimal level of stability lacks utility and would not be suitable for parenteral administration."  Dkt. No. 147, Exh. 22, Tab 4, at ¶ 12.  When Heron inquired as to Azurity's intentions regarding the issue of utility, *see id.,* Tab 5, at 1, Azurity responded that Heron's position on the issue of stability has "given rise to a possible utility argument," *id.*, Tab 6, at 1.

It is undisputed that Azurity was under an obligation to disclose any of its invalidity contentions by January 13, 2025, and that Dr. Amiji was required to disclose all of his opinions on invalidity in his expert report, which was served on June 27, 2025.  Neither the invalidity contentions nor Dr. Amiji's report contained any reference to a defense of lack of utility.

Azurity does not dispute any of that.  Instead, Azurity's principal contention is that Heron misled it into believing that Heron regarded physical stability as a necessary requirement of the claims of all three asserted patents in this case, and that Azurity was unfairly surprised when Heron took the position that physical stability was not a requirement of the asserted claims of the '254 and '255 patents.[1]  Dkt. No. 145, Exh. 18, Defendants' Opposition to Plaintiff's Motion *In Limine*

---

[1]  The parties have recently stipulated that the only remaining claims for trial are claims 5 and 23 of U.S. Patent No. 12,115,255 ("the '255 patent") and claim 8 of U.S. Patent No. 12,290,520 ("the '520 patent").  Heron is no longer asserting any claims of U.S. Patent No. 12,115,254 ("the

No. 1, at 1–2. Azurity concludes its opposition to Heron's motion *in limine* by saying: "Had Heron properly disclosed its theory regarding the '254 and '255 patents—or any of the many related patents—in its contentions, Azurity would have been on notice and would have raised the lack of utility defense as it relates to enablement. . . . Heron cannot possibly be surprised that its reliance on a new theory at this late stage has consequences, including opening the door to defenses that were not at issue based on Heron's prior arguments. Heron has no one to blame but itself for the timing of Azurity's utility defense. Preclusion of Azurity's argument would be prejudicial and unwarranted." *Id.* at 3.

I reject the premise of Azurity's argument. As I explained at some length in an order entered on October 29, 2025, Azurity has been on notice for some time that Heron regarded physical stability as a feature of the inventions, but that the asserted claims of the '254 and '255 patents did not require physical stability as necessary as a limitation of those claims. Dkt. No. 136. Therefore, to the extent Azurity argues that Heron's "about-face" (as Azurity puts it) on that issue justifies Azurity's decision to raise what Azurity admits is a "new theory" of utility, *see* Dkt. No. 145, Exh. 18, Defendants' Opposition to Plaintiff's Motion *In Limine* No. 1, at 2, 3, I disagree with that characterization, and for that reason I do not agree that Azurity was entitled to raise a new utility argument at a very late stage of this case.

Azurity has a backup argument, which it emphasized mainly in the pretrial conference when the parties addressed the motions *in limine*. Citing the Federal Circuit's decision in *In re Cortright*, 165 F.3d 1353 (Fed. Cir. 1999), Azurity argued at the conference that there is a second form of utility argument arising from the enablement requirement of section 112 of the Patent Act.

_____

'254 patent") for trial. The parties dispute whether physical stability is a required limitation of the '255 patent. Physical stability is expressly set forth as a limitation of the one asserted claim of the '520 patent.

Specifically, Azurity contended that on the issue of enablement, Dr. Amiji will testify that the patents are invalid because they do not satisfy the statutory requirement that patent specifications must teach a person of skill in the art how to "make *and use*" the claimed inventions.  While the parties disagree about whether that contention relates to a failure to disclose utility, that question is ultimately one of nomenclature.  What is clear is that Azurity has not raised an issue of utility under 35 U.S.C. § 101, but that it has raised an issue as to whether the specifications of the asserted patents have enabled a person of skill in the art to practice the patents across the full scope of the claims, as required by 35 U.S.C. § 112.  As long as Dr. Amiji's testimony is confined to the latter, he will be permitted to testify in accordance with the positions spelled out in his reports, but he will not be allowed to make a conventional utility argument of the sort that is usually characterized as arising under section 101.

3.  Plaintiff's Motion *in Limine* No. 2 to Preclude Azurity From Raising New Written Description and Enablement Arguments.

Heron's second motion *in limine* is directed at what it characterizes as a "new, untimely, and undisclosed written description and enablement argument" raised by Azurity for the first time just days before the trial.  Dkt. No. 145, Exh. 19, at 1.

According to Heron, the written description and enablement arguments in Azurity's invalidity contentions and in Dr. Amiji's reports were directed to the alleged absence of an adequate written description or enablement for emulsifier concentrations outside the range of 13–15% and ratios of emulsifier to aprepitant outside the range of 18:1 to 22:1.  But in its Contested Facts submitted with the Joint Proposed Pretrial Order, Azurity characterized its written description and enablement arguments more broadly, to include a contention that the patents failed

4

to satisfy the written description or enablement requirements with respect to other components of the asserted claims, i.e., components other than the emulsifier and aprepitant.

Heron argues that there was nothing in Azurity's invalidity contentions that called out written description or enablement failings in the description of the other components in the claimed compositions, and there was nothing of substance in Dr. Amiji's reports that focused on the invalidity problems with those other components. For that reason, Heron contends that Azurity should not be permitted to raise the written description and enablement arguments relating to the excipients at trial or otherwise in support of its invalidity defense.

In its brief, Azurity does not respond to Heron's contention that the Azurity failed to raise the written description and enablement theory relating to the excipients in its invalidity contentions. At the pretrial conference, however, Azurity pointed to a passage at pages 82 through 83 of its invalidity contentions, where Azurity stated: "There is no teaching in the specification as to what adjustments to the compositions should be considered to successfully prepare emulsions with the claimed concentrations above 22:1, as claimed in the '254 and '255 patents." Dkt. No. 147, Exh. 22, Tab 1, at 82–83. Azurity's main contention, however, is that the theory regarding the excipients was raised in Dr. Amiji's opening report, which was served on Heron in June 2025. Azurity points to paragraph 167 of Dr. Amiji's report, which includes three sentences addressing the written description issue with respect to the concentration of excipients other than the emulsifier. Those sentences read as follows:

> A POSA would not think the higher concentrations of emulsifier was possible while maintaining the same amounts of other excipients. The prior art taught that all of the excipients were co-dependent and that modifying one would have an impact on stability. Without the necessary level of description explaining how to modify the other excipients, a POSA would not believe that simply increasing the emulsifier would result in a stable and usable emulsion.

Dkt. No. 147, Exh. 22, Tab 2, at ¶ 167.

5

With respect to enablement regarding the excipients other than the emulsifier, Azurity points to other portions of Dr. Amiji's report, particularly paragraph 185, which states that "in view of Heron's statements regarding the inter-relatedness of the components (including aprepitant, emulsifier, oil, co-surfactant and water) and amounts in an emulsion formulation, a POSA would need to engage in undue experimentation to evaluate the preparation of aprepitant emulsions over the full scope of the asserted claims with little guidance or direction from the specification or any of the Examples." Dkt. No. 147, Exh. 22, Tab 2, at ¶ 185. Azurity also points to paragraph 184 of Dr. Amiji's report, in which he states: "Given the limited amount of guidance in the specifications, particularly in the examples of aprepitant emulsions, and Heron's arguments regarding specific components and amounts in the formulation, the scope of the claims would require undue experimentation by a POSA, with no reasonable expectation of producing a stable emulsion . . . ." *Id.* at ¶ 184. In addition, Dr. Amiji's opening and reply reports contain quotations from Heron and its representatives stating that the claimed emulsion "is very complex. The ratio of lecithin to aprepitant, oil to aprepitant, and sodium oleate used, everything is important to make a stable emulsion. *Id.* at ¶ 183. Dr. Amiji's reply report contains a brief discussion of the role of the other excipients with respect to the enablement and written description issues. Regarding enablement, Dr. Amiji states in his reply report, responding to Dr. Little's report, that "[t]o increase emulsifier concentration or modify the ratio of emulsifier to aprepitant, other concentrations and ratios in the formulation must change. The Asserted Patents do not provide any information to a POSA concerning making and using such emulsions." Dkt. No. 147, Exh. 22, Tab 3, at ¶ 78.

While those statements from Dr. Amiji do not constitute an extensive discussion of the written description and enablement problems that Azurity seeks to present as grounds for

invalidating the asserted claims, they were sufficient to put Heron on notice that problems with the other excipients would be part of Azurity's theory of invalidity.

It is true that, so far as disclosed in the parties' presentations in the briefs on motion *in limine* number 2, the written description and enablement issues that Azurity raises with respect to the other excipients were not called out in any detail in the invalidity contentions that Azurity served on Heron in January 2025. The portion of the invalidity contentions that Azurity relied on at the conference on the motions *in limine* does not provide adequate notice of that theory, as the closest that contention comes is to refer to there being "no teaching in the specification as to what adjustments to the compositions should be considered to successfully prepare emulsions with the claimed concentrations above 22:1 . . . ." Dkt. No. 147, Exh. 22, Tab 1, at 82.

Standing by itself, that one sentence would not be sufficient to alert Heron as to the nature of the "other excipients" argument Azurity intended to raise. By June 2025, however, that issue was raised with more specificity through Dr. Amiji's opening report. Had Azurity moved to modify its invalidity contentions at that time, I would have allowed it to do so, given that there was sufficient time at that point for Heron to respond to those arguments. Because I do not regard the delay in providing notice to Heron of the "other excipients" argument as having deprived Heron of a fair opportunity to respond to that argument, I do not believe Heron has suffered prejudice from the absence (or, at best, bare presence) of that argument in Azurity's invalidity contentions. I will therefore not foreclose Azurity from raising the "other excipients" argument at trial. However, as with all expert evidence, Dr. Amiji's testimony will be limited to the scope of the disclosures made in his expert reports. The motion *in limine* regarding the other excipients is therefore denied.

4. <u>Plaintiff's Motion *in Limine* No. 3 to Preclude Azurity from Raising New Positions Based on Allegedly Inoperative Embodiments.</u>

Heron's third motion *in limine* seeks an order barring Azurity from raising "an untimely and undisclosed position regarding allegedly inoperative embodiments," as revealed in the laboratory notebooks prepared by the inventors, Dr. Ottoboni and Dr. Han. Dkt. No. 145, Exh. 20, at 1. Heron contends that Azurity's "inoperative embodiments" argument was not raised until October 31, 2025, when Azurity made an amendment to the draft of its Contested Facts set forth in the Joint Proposed Pretrial Order. The amendment added the allegation that "much of the claimed ranges in the Asserted Patents are unstable and unusable as injectable emulsions" based on material found in Heron's laboratory notebooks. Dkt. No. 147, Exh. 22, Tab 10, at ¶ 76. Because, in Heron's view, Azurity raised this issue only days before trial, Heron argues that the court should foreclose Azurity from pursuing the issue at trial.

While Azurity acknowledges that this issue was not raised with specificity in its invalidity contentions or in Dr. Amiji's reports, Azurity contends that the issue of the unpredictability of the various emulsions with which Heron's inventors experimented supports the broader contention that Heron did not have possession of the invention as claimed. Azurity concedes that Dr. Amiji did not address the Heron laboratory notebooks as part of his written description analysis. Consequently, Azurity does not plan to offer affirmative testimony from Dr. Amiji, although it does plan to rely on deposition testimony from other witnesses to support its case on this issue, and Azurity points out that the deposition testimony in question has not been objected to. Most directly at issue on this motion *in limine* is whether Azurity may cross-examine Dr. Little regarding the Heron laboratory notebooks.

I agree with Azurity that, broadly viewed, the question whether Heron's specification demonstrates that it was in possession of the claimed inventions has been in the case since the outset.  On the other hand, the specific dispute that seems to have precipitated this motion *in limine* has arisen only in the last days before trial.  In particular, the question whether Azurity should be allowed to cross-examine Dr. Little regarding the Heron notebooks has arisen at the last minute.

As to the cross-examination issue, Dr. Little will testify at trial and will of course be subject to cross-examination on subjects within the scope of his direct his testimony.  To the extent that any cross-examination of Dr. Little is within the scope of his direct testimony, it will be allowed. But Azurity will not be allowed to introduce evidence in support of its "inoperative embodiments" theory through cross-examination of Dr. Little if Azurity's questions are not within the scope of Dr. Little's direct examination.

Heron's motion *in limine* touches on broader questions, such as (1) whether and to what extent Azurity will be foreclosed from arguing that any failures on the part of the inventors in the course of their experiments on various emulsion formulations bear on the written description issue and, more broadly, (2) what limits should be placed on the evidence Azurity may elicit in arguing lack of written description.  Those are matters that I cannot conclusively resolve based on the limited presentations made in the briefing and argument on this motion *in limine*.  Those issues will therefore be carried to trial.

\* \* \* \* \*

In an excess of caution, and because the materials submitted to the court on the issues addressed in this order were filed under seal, the order is designated as filed under seal.  However, the parties are directed to advise the court by Wednesday, November 26, 2025, whether they regard it as necessary that any portion of this order remain under seal.  If so, the party or parties requesting

that relief will be required to make a particularized showing of need to maintain the sealed status

of the order.  The court will promptly rule on any such request to maintain the sealed status of the

order.

IT IS SO ORDERED.

SIGNED this 14th day of November, 2025.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE